**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT W. KEATS,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | Civil Action No. 25-3594 (CKK) |

**MEMORANDUM OPINION**
(July 22, 2026)

This action relates to a bankruptcy proceeding that is pending in the Western District of Kentucky. The Defendants have moved to transfer this action to that District and to extend their deadline to respond to the Plaintiff's Complaint. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT** the Defendants' [6] Motion to Transfer Case to the U.S. District Court for the Western District of Kentucky and **GRANT IN PART** and **DENY WITHOUT PREJUDICE IN PART** the Defendants' [7] Motion for Extension of Time to Answer. The Defendants' obligation to respond to the Plaintiff's Complaint shall remain **STAYED** until seven days after this case is docketed in the U.S. District Court for the Western District of Kentucky, within which time the Defendants may renew their motion for extension of time to file an Answer or otherwise respond to the Plaintiff's Complaint.

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:

- The Plaintiff's Complaint ("Compl."), Dkt. No. 1;
- The Defendants' Motion to Transfer Case to the U.S. District Court for the Western District of Kentucky and for Extension of Time to Answer ("Defs.' Mot."), Dkt. Nos. 6 and 7;
- The Plaintiff's Opposition to the Defendants' Motion ("Pl.'s Opp'n"), Dkt. No. 8; and
- The Defendants' Reply ("Defs.' Reply"), Dkt. No. 9.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

## I. BACKGROUND

### A. Factual Background

The Plaintiff in this action is the Trustee in Bankruptcy for the Estate of Decker, Inc., d/b/a Decker College, Inc. Compl. at 1 & ¶ 8. Decker College was a vocational school that was founded in Louisville, Kentucky in 1989 and accredited by the Council for Occupational Education ("COE") in 1992. *Id.* ¶¶ 2, 14–15.

In 2002, Decker began developing "hybrid" programs in multiple construction-related fields that combined online and in-person instruction. *Id.* ¶ 17. Decker enrolled approximately 4,500 students in these and other programs in the 2004–2005 academic year. *Id.* ¶ 20.

Like most colleges, Decker relied for its operations on its ability to enroll students receiving federal financial aid. *See* Compl. ¶¶ 1, 22. In June 2005, the Kansas City office of the Department of Education's Office of Federal Student Aid ("FSA") opened an inquiry that led to a change in how Decker received and processed student financial aid funding. *See id.* ¶¶ 26–30. After this change, instead of receiving federal funds from the Department and then disbursing those funds to student borrowers, Decker was required to advance its own funds to student borrowers and submit requests to the FSA for reimbursement. *Id.* ¶¶ 27–28. This change placed Decker in a precarious financial position. *See id.* Nonetheless, following the new procedure, Decker submitted reimbursement requests in July 2005, August 2005, and September 2005. *Id.* ¶¶ 1, 29–30. The FSA rejected Decker's July 2005 request on grounds that Decker disputed. *Id.* ¶ 29. Decker then prepared two new reimbursement requests, which it submitted in August 2005 and September 2005. *Id.* ¶ 30. By late September 2005, the Department had not processed any of the requested reimbursements. *See id.* ¶¶ 29–32.

On September 30, 2005, Decker's CEO received a letter from FSA denying Decker's request for recertification to participate in federal financial aid programs. Compl. ¶ 32. The letter

alleged that Decker's construction-related programs had not been accredited by COE, meaning that Decker had violated federal rules by awarding federal funds to students enrolled in those programs. *Id.* Decker's Trustee alleges that this letter "came as a surprise." *Id.*

Three weeks later, on October 21, 2005, the Federal Bureau of Investigation ("FBI") seized "nearly all of Decker's physical and electronic records" in connection with an investigation by the Department of Education's Office of Inspector General. Compl. ¶¶ 39–40, 48. The Trustee states that this investigation did not result in any findings of wrongdoing, civil liabilities, or criminal proceedings, but that the FBI nonetheless retained Decker's records until 2009. *Id.* ¶ 39.

Decker shut down on the day of this seizure, and it did not reopen. Compl. ¶ 40. Decker's creditors filed an involuntary bankruptcy petition in the Western District of Kentucky later that month. *Id.* ¶ 41.

Decker's Trustee alleges that many of the events leading to the school's closure resulted from acts by a specific employee of the Department of Education, Ralph LoBosco, who allegedly harbored a grudge against Decker's then-Chief Executive Officer, William F. Weld. *See* Compl. ¶¶ 2, 23–27, 34–37. The Trustee alleges that Mr. LoBosco was previously a senior official at a private educational institution that closed after a fraud investigation and prosecution that Mr. Weld led while he was serving as U.S. Attorney in Massachusetts. *Id.* ¶ 23. The Trustee further alleges that Mr. LoBosco "told [a former Decker employee] that the change in position caused by [this institution's] closure significantly affected his and his wife's lifestyle." *Id.* ¶ 24.

According to the Trustee, Mr. LoBosco led the office responsible for overseeing Decker's compliance with federal financial aid requirements and was personally involved in many of the events that precipitated Decker's closure. *Id.* ¶¶ 25–27, 34–37. The Trustee alleges that Decker later learned through Freedom of Information Act Requests that, prior to Decker's closure,

Mr. LoBosco had been communicating directly with Gary Puckett, the Executive Director of Decker's accreditor, COE, about Decker and its construction programs. Compl. ¶ 34. Following these communications, Mr. Puckett sent a letter to the Department claiming that COE had not approved Decker's construction programs to be offered online. *Id.* ¶ 37.

**B. Procedural History**

In March 2006, after Decker had closed, the Department issued a Final Program Review Determination ("FPRD") stating the final findings and proposed liabilities assessed by the FSA in connection with the review of Decker's operations that it opened in June 2005. Compl. ¶ 43. The FPRD asserted that Decker had improperly awarded approximately $31.6 million in federal financial aid to students enrolled in its allegedly unaccredited construction programs. *Id.* ¶ 44. The FPRD also asserted a series of other violations resulting in smaller liabilities, for a total liability of approximately $32.1 million. *See id.* ¶¶ 44–47. The Department later filed a proof of claim in Decker's bankruptcy proceeding based on the liabilities asserted in the FPRD. *Id.* ¶ 49.

The Department also sent Decker a letter denying its outstanding requests for reimbursement, citing the ineligibility of Decker's construction programs due to their alleged lack of accreditation, the liabilities outlined in the FPRD, and Decker's failure to submit a close-out audit. Compl. ¶ 48.

Decker then initiated a series of administrative and judicial proceedings to challenge the findings in the FPRD, including the FSA's conclusion that its construction programs lacked accreditation. *See* Compl. ¶¶ 51–65.

These proceedings resulted in a finding by the U.S. Bankruptcy Court in the Western District of Kentucky that COE's employees, including Mr. Puckett, "made factually erroneous statements" to the Department about COE's approval of Decker's construction programs, including their online components. *See In re Decker Coll., Inc.*, Bankr. No. 05-61805, Adv.

No. 09-3091, 2012 WL 6136708, at *1 (Bankr. W.D. Ky. July 10, 2012). The Bankruptcy Court found that COE had "implicitly authorized" Decker to offer these programs through online distance education. *Id.* at *7. COE appealed these findings to the U.S. District Court for the Western District of Kentucky, which affirmed the findings as "reasonable given the evidence advanced at trial" and "fully supported by the record evidence." *Keats v. Council on Occupational Educ., Inc.*, No. 3:12-mc-0018-H, 2012 WL 6084646, at *6 (W.D. Ky. Dec. 6, 2012). COE further appealed to the Sixth Circuit, which dismissed the appeal for lack of appellate jurisdiction because it concluded that the District Court's decision was not a final order and the District Court had not certified the matter for interlocutory appeal. *In re Decker Coll., Inc.*, 578 F. App'x 579, 581–82 (6th Cir. 2014).

With these judicial decisions in hand, Decker returned to the Department's administrative process and eventually secured a decision from the Secretary of Education that eliminated nearly all of the $32.1 million liability asserted in the FPRD. Compl. ¶¶ 58–65. However, this decision did not resolve Decker's requests for reimbursement of the federal financial aid funds that it had advanced to students before its closure. *See id.* ¶ 65.

In an effort to obtain reimbursement following the Secretary's decision, Decker began reassembling student files from among the records that the FBI had seized in 2005 and returned in 2009. *See* Compl. ¶¶ 69–71. In support of its reimbursement requests, Decker eventually submitted a set of student files to the Department for its review in December 2018, and it submitted a second set in May 2019. *Id.* ¶ 71. In its May 2019 submission, Decker formally requested reimbursement of approximately $3.6 million. *Id.* The Department acknowledged receipt of this submission in June 2019. *Id.* ¶ 72.

In response to Decker's request for reimbursement, the U.S. Attorney's Office in the Western District of Kentucky sent a letter to the Trustee and his counsel by email in October 2019, stating that the Department would not process Decker's request until Decker provided certain information. Compl. ¶ 72; *id.* Ex. F, Dkt. No. 1-6. Specifically, the letter requested more information about how Decker decided whether students had completed a proper amount of academic activity for each credit hour awarded, how some students were able to earn large numbers of credits in short periods of time, and whether students were on track to complete their programs. *See* Ex. F, Dkt. No. 1-6. Decker argues that these requests are improper, but the Department has not changed its position, and it has not processed Decker's request for reimbursement. *See id.* ¶¶ 2, 74.

In the present action against the Department and the Secretary, Decker's Trustee argues that the Department has violated the Administrative Procedure Act ("APA") by failing to process its May 2019 reimbursement request. Compl. ¶¶ 7, 75–94. Specifically, Decker argues that the Department has arbitrarily and capriciously conditioned its review of Decker's request on "unreasonable and pretextual demands for further information." *Id.* ¶ 79. Decker also argues that the Department has unreasonably delayed issuing a final determination in response to Decker's request and should be compelled to do so under the APA and the Mandamus Act. *Id.* ¶¶ 82–94.

The Defendants now move to transfer this action to the U.S. District Court for the Western District of Kentucky and to extend their time to respond to the Complaint until 21 days after the request for transfer is resolved. Defs.' Mot., Dkt. No. 6 at 4. The Plaintiff opposes this motion, and the Defendants have filed a reply. Pl.'s Opp'n, Dkt. No. 8; Defs.' Reply, Dkt. No. 9. The Court stayed the Defendants' deadline to respond to the Plaintiff's Complaint pending resolution of the Defendants' motion. Min. Order (Feb. 2, 2026). This motion is now ripe for decision.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses" and "in the interest of justice," a district court may transfer a civil action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party moving to transfer venue bears the burden of establishing that the proposed transfer is proper. *Rossville Convenience & Gas, Inc. v. Barr*, 453 F. Supp. 3d 380, 385 (D.D.C. 2020) (ABJ). When evaluating whether the moving party has carried this burden, the Court must engage in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "The Court has 'broad discretion' to transfer a case" based on its consideration of these factors. *Rossville Convenience*, 453 F. Supp. 3d at 385 (quoting *In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983)).

When a party requests an extension of the deadline to respond to a complaint before the response deadline or a previous extension of that deadline expires, the Court "may, for good cause," extend the deadline. Fed. R. Civ. P. 6(b)(1)(A). Whether to grant such an extension is a matter of discretion. *Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005).

## III. ANALYSIS

### A. Motion to Transfer

To decide whether to transfer an action for convenience and in the interests of justice under 28 U.S.C. § 1404(a), the Court must proceed in two steps. *Bourdon v. United States Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 304 (D.D.C. 2017) (CKK). First, the Court must decide whether the proposed transferee forum is one in which the action "might have been brought" originally. *Id.* (quoting 28 U.S.C. § 1404(a)). Second, the Court must consider whether private and public interest factors weigh in favor of transfer. *Id.* Because both requirements for transfer are satisfied in this case, the Court shall **GRANT** the Defendants' [6] Motion to Transfer.

1. <u>Venue would be proper in the Western District of Kentucky.</u>

When a federal agency, officer, or employee is a defendant in an action that does not involve real property, venue is proper "in any judicial district" in which "a defendant in the action resides," in which "a substantial part of the events or omissions giving rise to the claim occurred," or in which "the plaintiff resides." 28 U.S.C. § 1391(e)(1).

This requirement is readily satisfied here because the Plaintiff resides in the Western District of Kentucky. *See* Pl.'s Opp'n at 8; *see also* Compl. at 1 (stating address of record).

Moreover, much of the relevant conduct underlying the Plaintiff's claim appears to have occurred in the Western District of Kentucky. This conclusion is reinforced by the fact that the Plaintiff recently filed a related action alleging nearly identical facts in that District's Bankruptcy Court, in which the Plaintiff argued that those facts supported laying venue there. *See* Compl., *Keats v. Dep't of Education*, Bankr. No. 05-61805, Adv. No. 3:25-3008-JAL, Dkt. No. 1 (Bankr. W.D. Ky. filed Mar. 4, 2025) (arguing that venue was proper in the Western District of Kentucky "because a substantial part of the events or omissions giving rise to the claims asserted [against the Department and the Secretary] occurred in [that] judicial district" and alleging that "Decker maintained its main campus in Louisville, Kentucky," "maintained an additional branch campus in Louisville during much of the relevant time period," and enrolled "[a] large number of students" who "attended classes and/or resided in" that District).

Because venue in this action would be proper in the Western District of Kentucky and there is no dispute as to personal or subject-matter jurisdiction, this action "might have been brought" in a federal court in that District. *See* 28 U.S.C. § 1404(a). The Court therefore proceeds to the second step of the transfer analysis.

2. The relevant private and public interest factors favor transfer.

Next, the Court must consider whether the relevant private and public interests weigh in favor of a transfer to the Western District of Kentucky. *See Bourdon*, 235 F. Supp. 3d at 304.

When deciding whether to transfer an action, the Court considers the following private interest factors: "(1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001) (RMU).

In an APA case, "the six private-interest factors collapse into three inquiries: (1) deference to each parties' forum choice; (2) the link between the relevant fora and the claims; and (3) overall convenience." *Stewart v. Azar*, 308 F. Supp. 3d 239, 245 (D.D.C. 2018) (JEB). The Court takes each of these inquiries in turn.

Here, the Plaintiff's choice of forum is entitled to greater weight than the Defendants' choice. In most cases, a plaintiff's choice of forum receives "substantial deference." *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 128. Although many of the events underlying the Plaintiff's claim occurred in his home district, the Western District of Kentucky, the Plaintiff's choice to litigate in this forum is entitled to at least some deference because his claim also has a nexus to this District. *See Stewart*, 308 F. Supp. 3d at 245. The parties dispute where, exactly, the Defendants made the decisions that are at issue in this case, but the Plaintiff has plausibly alleged that the Defendants made some of the relevant decisions here, in their home district. *Compare* Pl.'s Opp'n at 6–8, *with* Defs.' Mot. at 4, 7, *and* Defs.' Reply at 3–4. Accordingly, this case is unlike those in which a plaintiff's choice of forum other than his home district receives less

deference because his chosen forum "has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" *See, e.g.*, *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996) (RMU) (quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995) (PLF)); *Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54 (D.D.C. 2012) (JEB). Because the Plaintiff's choice of forum is entitled to greater deference than the Defendants' choice in this case, this first factor weighs against transfer.

On the present record, the relative strength of the factual links between the relevant fora and the claims is unclear and contested, leaving the second factor in equipoise. As the Court has explained, the parties dispute whether the Defendants made the decisions giving rise to the Plaintiff's APA claims in this District or in the Western District of Kentucky. *Compare* Pl.'s Opp'n at 6–8, *with* Defs.' Mot. at 4, 7, *and* Defs.' Reply at 3–4. Although the Defendants reside in this District, the October 2019 letter setting out the agency position that the Plaintiffs challenge in this case was sent by email from the U.S. Attorney's Office in the Western District of Kentucky. *See* Dkt. No. 1-6. Meanwhile, most of the factual developments preceding that decision occurred in the Western District of Kentucky, not the District of Columbia. Given the ambiguities and conflicting evidence, the Court places little weight on this factor in the transfer analysis.

The interests of overall convenience are also in equipoise. Because this case will be decided on an administrative record, "the convenience of witnesses and the ease of access to sources of proof are 'not likely to be relevant.'" *Stewart*, 308 F. Supp. 3d at 248 (quoting *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 7 (D.D.C. 2013) (JEB)). Accordingly, it appears to the Court that the relevant convenience interests are based on the locations of the parties' preferred counsel: The Plaintiff's counsel are located in this District, while the Defendants' preferred counsel are located in the Western District of Kentucky. *See* Defs.' Mot. at 7–8 (indicating that the

Defendants' preferred counsel is the U.S. Attorney's Office for the Western District of Kentucky, which is "familiar with parties' twenty-year history"); Pl.'s Opp'n at 8 (stating that although the Trustee "resides in Kentucky," "it is significantly more convenient and economical for the estate to litigate in Washington, D.C."). These competing convenience interests offset one another and do not tip the overall balance one way or the other.

In addition to the foregoing private interest factors, the Court also considers the following public interest factors: "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Greater Yellowstone Coalition,* 180 F. Supp. 2d at 128.

The first of these factors weighs strongly in favor of transfer. Because "all federal courts are presumed to be equally competent to interpret federal law," relative familiarity with the governing law weighs neutrally in the analysis. *See Wilderness Workshop v. Harrell*, 676 F. Supp. 3d 1, 8 (D.D.C. 2023) (JMC). However, "the pendency of related actions in the transferee's forum" is entitled to significant weight. *See Greater Yellowstone Coalition,* 180 F. Supp. 2d at 128. The bankruptcy proceedings at the heart of this case, including a related and recently filed adversary proceeding, are still pending in the Western District of Kentucky. Going forward in this District while related proceedings are pending elsewhere presents a significant risk of inefficiency, or worse, inconsistent judgments. *See Pac. Mar. Ass'n v. N.L.R.B.*, 905 F. Supp. 2d 55, 62–63 (D.D.C. 2012) (BAH) (describing the pendency of related actions in the transferee forum as a matter "of paramount and overriding concern" where the outcome of the case to be transferred would be important to a case pending in another district).

The Court is unpersuaded by the Plaintiff's suggestion that the pendency of related bankruptcy proceedings in the Western District of Kentucky should not result in transfer because those proceedings are currently stayed and are pending in the bankruptcy court, rather than in the district court. *See* Pl.'s Opp'n at 9–11. There is no indication in the record that this stay will continue indefinitely, and there is always the potential for an appeal from the bankruptcy court to the district court. Accordingly, there is a strong possibility that the U.S. District Court for the Western District of Kentucky will eventually need to weigh the facts at the heart of this case again—either with the benefit of having become familiar with those facts by deciding this case, or with the burden of avoiding potential inconsistency with a prior judgment from this Court. These considerations weigh in favor of transfer.

The Plaintiff also argues that this case should remain in this District in part because he also filed a related action in the Court of Federal Claims, which is located in Washington, D.C. Pl.'s Opp'n at 9. He suggests that the geographic proximity between this Court and the Court of Federal Claims would make it convenient for the parties to litigate here, especially while the related proceedings in the Western District of Kentucky remain stayed. *Id.* However, the Court takes judicial notice that the Plaintiff voluntarily dismissed his case before the Court of Federal Claims shortly after the United States moved to dismiss his claims in that court for lack of subject-matter jurisdiction. *See* Notice of Voluntary Dismissal, *Keats v. United States*, 25-cv-1665-MRS, Dkt. No. 10 (Fed. Cl. Apr. 17, 2026); *see also Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (noting that a court may properly take judicial notice of "related proceedings in other courts"); *Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 371 (D.D.C. 2015) (ABJ) (same, collecting cases), *aff'd*, No. 15-5136, 2015 WL 9309944 (D.C. Cir. Dec. 7, 2015). Accordingly,

any argument based on the pendency of the case in the Court of Federal Claims and the relative convenience of litigating both that case and this one in Washington is now moot.

The next factor is the relative congestion of court calendars in the transferee and transferor Districts, which does not significantly affect the analysis in this case. "Absent a showing that either court's docket is "substantially more congested" than the other, this factor weighs neither for nor against transfer." *Stewart*, 308 F. Supp. 3d at 248. In this case, the parties have produced statistics showing that this District has a much greater total number of pending civil cases (3,347 in D.D.C. vs. 931 in W.D. Ky.), but the Western District of Kentucky has a somewhat greater total number of pending cases per judgeship (323 in D.D.C. vs. 445 in W.D. Ky.) and a somewhat longer median time to disposition in civil cases (7.3 months in D.D.C. vs. 8.1 months in W.D. Ky.). *See* Pl.'s Opp'n at 9–10. The differences between these statistics are not substantial enough to weigh heavily in the transfer analysis.

Finally, "the local interest in deciding local controversies at home" weighs in favor of transferring this case to the Western District of Kentucky. *See Greater Yellowstone Coalition,* 180 F. Supp. 2d at 128. The Plaintiff argues that there are "few, if any, remaining ties to Kentucky" at issue in this case because Decker College has been inactive since 2005, but this argument misses the mark. *See* Pl.'s Opp'n at 11. As the Court sees it, the most important "local interest" in this case is the interest in correctly settling the assets and liability of Decker's estate. That interest is "local" to the Western District of Kentucky, where the estate is located and where its bankruptcy proceeding is pending. Although there is always a general *national* interest in ensuring that federal agencies and officers based in Washington adhere to the law, that interest does not support retaining venue in this District where, as here, there is no specific question of national scope or of particularized interest to this District at issue and there are countervailing local interests that favor

hearing the case elsewhere. *See Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 59 (D.D.C. 2012) (JEB) (granting motion to transfer where plaintiffs failed to show that a local controversy was "of such national scope that it demand[ed] to be heard outside of [the plaintiff's] home forum" and the District of Columbia had no "particularized interest" in the case); *see also Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) (cautioning against allowing cases to proceed in this District based on the inclusion of "high government officials as defendants" when the disputes "properly should be pursued elsewhere").

Taken together, the private and public interest factors weigh in favor of transferring this case to the Western District of Kentucky. Although the private interest factors weigh slightly in favor of retaining the case here, the public interests in adjudicating related cases together and in deciding local controversies locally favor transferring the case. Ultimately, the public interests served by a transfer outweigh the private interest in retaining the case in this District.

* * *

In sum, the Court concludes that this case could have originally been brought in the Western District of Kentucky, and that the balance of the private and public interest factors weighs in favor of transferring this action to that District. Accordingly, the Court will exercise its discretion under 28 U.S.C. § 1404(a) to transfer this action to the Western District of Kentucky.

**B. Motion for Extension of Time**

The Defendants also move to extend their time to respond to the Complaint until 21 days after their request for transfer is resolved. Defs.' Mot., Dkt. No. 6 at 4. The Plaintiff vigorously opposes this request, noting that the Defendants previously received a significant extension of time in connection with the lapse in federal appropriations in late 2025. Pl.'s Opp'n at 12–13.

Whether to extend a filing deadline is a matter of discretion. *See Smith*, 430 F.3d at 456; Fed. R. Civ. P. 6(b)(1). Because this discretion is best exercised by the court that will preside over

further proceedings, the Court shall grant the Defendants' motion only to the extent necessary to allow them to direct a request for extension of time to the District Judge to whom this case will be assigned in the Western District of Kentucky. *See In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009) (noting that "[d]istrict judges must have authority to manage their dockets" and to decide "whether and how to enforce the deadlines they impose").

Accordingly, the Court shall **GRANT IN PART** and **DENY WITHOUT PREJUDICE IN PART** the Defendants' [7] Motion for Extension of Time to Answer. The Court shall extend the current stay of this deadline to continue until seven days after this case is docketed in the U.S. District Court for the Western District of Kentucky, within which time the Defendants may renew their motion for extension of time. The U.S. District Court for the Western District of Kentucky may dissolve, extend, or modify this stay, in its discretion.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** the Defendants' [6] Motion to Transfer Case to the U.S. District Court for the Western District of Kentucky and **GRANT IN PART** and **DENY WITHOUT PREJUDICE IN PART** the Defendants' [7] Motion for Extension of Time to Answer.

An appropriate order accompanies this Memorandum Opinion.

**Dated:** July 22, 2026

Colleen Kollar-Kotelly

COLLEEN KOLLAR-KOTELLY
United States District Judge